FILED

**MARKS & KLEIN, LLP**
Gerald A. Marks, Esq. (*Pro Hac Vice* Forthcoming)
Evan M. Goldman, Esq. (*Pro Hac Vice* Forthcoming)
63 Riverside Avenue
Red Bank, New Jersey 07701
Telephone: (732) 747-7100
Facsimile: (732) 219-0625
jerry@marksklein.com
evan@marksklein.com

**SCHINDLER LAW GROUP**
Eric Schindler, Esq. (State Bar No. 141386)
20321 SW Birch Street, Suite 200
Newport Beach, California 92660
Telephone: (949) 483-8700
Facsimile: (949) 464-9714
eric@schindlerlaw.net

Attorneys for Plaintiff

ADNAN KHAN

2014 MAR 18  PM 3: 1~

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

**UNITED STATES DISTRICT COURT FOR
THE CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION**

EDCV14=00522   JGB   SPX

ADNAN KHAN,

    Plaintiff,

v.

7-ELEVAN INC., a wholly-owned
subsidiary of SEVEN-ELEVEN JAPAN
CO. LTD., a wholly-owned subsidiary
of SEVEN AND I HOLDINGS CO. LTD,

    Defendants.

Case No.

**VERIFIED COMPLAINT FOR
VIOLATION OF THE CALIFORNIA
UNFAIR BUSINESS PRACTICES ACT,
VIOLATION OF THE CALIFORNIA
CIVIL ANTI-STALIKING STATUTE, AND
INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS**

DEMAND FOR JURY TRIAL

BY FAX

COME NOW the Plaintiff, ADNAN KHAN (hereinafter "Andy," "Khan" or "Andy

Khan") and for his Complaint against Defendant states as follows:



PLAINTIFF'S COMPLAINT AND JURY DEMAND

**INTRODUCTION**

1.     This is an action for illegal surveillance, franchisor abuse and the intentional infliction of emotional distress.

2.     Specifically, it is an action for: (i) Violation of the California Unfair Business Practices Act; (ii) Violation of the California Civil Anti-Stalking Statute, and (iii) Intentional Infliction of Emotional Distress.

3.     Defendant 7-Eleven, Inc., once a domestic icon, is now wholly owned and controlled by a Japanese corporation and is the largest convenience store chain in the world, with more than 31,000 locations worldwide. As a result of its Japanese parent's business model, 7-Eleven has changed its relationship with franchisees – going from a partnership to a authoritative, "big brother" dictatorship.

4.     For almost thirty-four years, Andy Khan has successfully operated five 7-Eleven franchised stores in Southern California. Specifically, Andy has operated the following stores: (i) Store No. 25922 located at 1533 Peck Road, South El Monte, California 91733; (ii) Store No. 14004 located at 1319 West Merced Avenue, West Covina, California 91790; (iii) Store No. 14024 located at 12954 Bess Avenue, Baldwin Park, California 91796; (iv) Store No. 25051 located at 12170 Ramona Boulevard, El Monte, California 91732; and (v) Store No. 22943 located at 1546 West Mission Boulevard, Pomona, California 91766 (collectively the "Stores").

5.     Since opening his first store, in South El Monte, California, Andy has operated as a stellar and tremendously profitable franchisee – for both himself and 7-Eleven.

6.     Additionally, Andy is an active speaker on behalf of the 7-Eleven franchisee community.

7.     Andy was one of the founding members of a national 7-Eleven Political Action Committee ("PAC"), served as President of the PAC from 2000 to 2007, and as Chairman from

2007 to 2009. Andy currently serves as Past President of the PAC. Additionally, Andy is an active member of three regional 7-Eleven Franchise Owners Associations ("FOAs"), where he served as various Boards of Directors for six years.

8.     The 7-Eleven PAC is intended to give franchisees a "voice" to address issues and concerns they face in the day-to-day operation of their respective 7-Eleven stores.

9.     The 7-Eleven PAC also works to protect the civil and constitutional rights of 7-Eleven franchisees by educating them of those rights.

10.     As 7-Eleven is aware, and upon information and belief, a majority of 7-Eleven owners are immigrants to the United States and do not fully understand their rights under United States law.

11.     The 7-Eleven PAC also builds and maintains relationships with key members of City, State and Federal governments.

12.     In recognition of his dedication to the PAC, and his stellar record as a franchisee, Andy was awarded the 2008 Franchisee of the Year Award by his fellow franchisees

13.     Today, Andy serves as a key advisor to all Southern California FOA Presidents.

14.     Upon information and belief, as a result of Andy's active involvement in the PAC and various FOAs, he has been targeted by 7-Eleven for termination.

## **JURISDICTION AND VENUE**

15.     This Complaint has jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity).

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (b).

17.     The amount in controversy on each of these counts set forth below exceeds the sum of $75,000 exclusive of interest and costs.

**THE PARTIES**

18.     Adnan Khan is a citizen of the State of California, residing in Walnut California.

19.     7-Eleven is a Texas corporation. It maintains a place of business at 1722 Routh Street, Suite 1000, Dallas, Texas 75201.

**BACKGROUND**

20.     For almost thirty-four years, Andy Khan, in good faith, has operated five 7-Eleven franchised stores.

21.     During that time, Andy has been the face of the 7-Eleven franchisee community and has received numerous awards and prestigious recognitions.

22.     In 2008, Andy was named Franchisee of the Year by the Greater Los Angeles FOA. Attached hereto and incorporated herein as Exhibit A is a true and correct copy of the Franchisee of the Year Award.

23.     In addition to receiving various awards from his peers and various FOAs, Andy recently received a Certificate of Achievement from 7-Eleven, recognizing his role as an advisor to rollout of the Business Transformation Pilot in Los Angeles. Attached hereto and incorporated herein as Exhibit B is a true and correct copy of the Certificate of Achievement. Additionally, Andy received a Certificate of Recognition from the City of Los Angeles. Attached hereto and incorporated herein as Exhibit C is a true and correct copy of the Certificate of Recognition.

24.     Furthermore, in the Second Fiscal Quarter of 2012, 7-Eleven named Andy as Retailer Initiation Champion. Attached hereto and incorporated herein as Exhibit D is a true and correct copy of the Retailer Initiation Champion award.

25.     As one of the founding members of the national 7-Eleven PAC, Andy recognized the need for franchisees to work with government officials to enact legislation that protects franchisees throughout the United States.

26.     The mission and ongoing purpose of the 7-Eleven PAC is to give 7-Eleven franchisees a forum to address issues and concerns that affect them in their day-to-day store operations.

27.     In or around September 2013, Andy received a Certificate of Congressional Commendations for the Watt-South Angeles Teen Community Response Team. Attached hereto and incorporated herein as Exhibit E is a true and correct copy of the Certificate of Congressional Commendations.

### 7-ELEVEN'S MISUSE OF ITS EMPLOYEES

28.     Upon information and belief, 7-Eleven has instituted a nationwide scheme to improperly intimidate and terminate long-term franchisees, with the goal of acquiring their successful stores.

29.     Upon further information and belief, 7-Eleven's intimidation and termination efforts are primarily focused on the states of New York, New Jersey and California.

30.     To achieve their goal of improperly terminating franchisees, such as Andy, 7-Eleven uses coercive and unlawful interrogation techniques, and has resorted to stalking franchisees.

31.     The sole purpose of acquiring franchisees' stores, such as Andy's – albeit through illegal means – is to "take back" the stores, at no cost, with the intent to ultimately re-sell the store, for a fee, to a third party purchaser.

32.     7-Eleven hired more Asset Protection employees than any other company in 2013. Attached hereto and incorporated herein as Exhibit F is a true and correct copy of a News Brief from D&D Daily.

33.     7-Eleven hired approximately thirty-five Asset Protection employees.

34.     7-Eleven uses its Asset Protection/Loss Prevention ("AP/LP") Department as a profit center to realize a significant return on its investment in hiring large numbers of Asset Protection employees.

35.     The pressure to provide a return on the AP/LP Department investment is tremendous.

36.     Upon information and belief, 7-Eleven has instituted quotas to the AP/LP Department which, in turn, causes the AP/LP employees to bring dubious and fabricated charges – based on unlawful and intimidating searches of franchisees, such as Andy.

37.     Upon further information and belief, 7-Eleven's efforts are primarily focused on FOA, PAC and/or Community Leaders.

38.     Converse to 7-Eleven, most retailers use their asset protection departments in a "non-productive" manner, trying to limit losses from theft and shrinkage.

39.     However, 7-Eleven uses its AP/LP Department as a "productive work center' by taking back franchises at no cost – only to resell them for a large fee.

40.     7-Eleven's efforts to terminate franchises and take back stores has been tremendously profitable for 7-Eleven.

41.     Upon information and belief, the amount received by 7-Eleven in reselling taken-back stores is in excess of ten million dollars.

42.     Andy's Stores are all located in primary target areas for 7-Eleven's unlawful investigations.

43.     When Mark Stinde ("Stinde"), Vice President of Asset Protection for 7-Eleven, was given permission by 7-Eleven to hire the aforementioned AP/LP Department employees, the positions were not posted publicly.

44.     The purported reason for the secretive hirings was to provide 7-Eleven with a secretive opportunity to investigate franchisees, and preserve the "element of surprise" when an increased quantity of stores began being taken back.

45.     When Stinde hired the new AP/LP Department employees, the vast majority of them were given assignments in two nearly-created divisions: (i) the Centralized Investigations Team ("CIT"); and (ii) the Profit Assurance Team, a **mobile surveillance team**.

46.     Upon information and belief, 7-Eleven used its CIT and mobile surveillance teams to stalk Andy.

## STALKING ANDY KHAN

47.     Despite being a stellar franchisee and community leader, 7-Eleven has resorted to harassing tactics in an effort to force Andy into abandoning his Stores.

48.     On or about October 2013, Andy noticed a white vehicle (the "White Vehicle") frequently appearing during his travels.

49.     His Operations Manager, Pauline Slyker ("Pauline" or "Slyker"), also noticed the White Vehicle.

50.     As a 2012 graduate of the Federal Bureau of Investigation's ("FBI") "Citizens Academy," Andy acquired a very particular set of skills in the art of surveillance.

51.     Andy noticed the White Vehicle following him and Slyker when they would travel, especially when they went to the bank to make large deposits of cash from his Stores.

52.     Oddly, Andy and Slyker noticed that the White Vehicle would not appear when their cell phones were turned off.

53.     Rather, only when Andy and Slyker's phones were active would the Vehicles appear.

54.     It was this fact that led them to believe that the stalker was finding their location by way of an elaborate GPS-tracking system.

55.     Fearful of being robbed and concerned for each other's safety, Andy and Slyker began to travel together when making their rounds from Store to Store.

56.     In an unsuccessful attempt to evade the White Vehicle, Andy and Slyker alternated their routes from day-to-day.

57.     Despite their valiant efforts, the White Vehicle continued following Andy and Slyker.

58.     After countless encounters with the White Vehicle, and in an effort to unmask the driver, Andy and Slyker began to follow the White Vehicle.

59.     During one these efforts, Slyker was able to capture a photograph of the White Vehicle's license plate. Attached hereto and incorporated herein as Exhibit G is a true and correct copy of the Photograph.

60.     In fact, Andy and Slyker chased the driver into a parking facility and the driver exited the vehicle and ran off.

61.     On or around October 10, 2013, Andy and Slyker contacted 7-Eleven Field Consultant Dennis Urrutia in order to bring the stalking incidents to his attention.

62.     During the in-person meeting, on or about January 8, 2014, Andy described the incidents to Urrutia, Slyker and 7-Eleven Field Consultant, Michelle Moore. Andy's cries for help fell on deaf ears.

63.     Subsequently, on January 13, 2014, Andy filed a police report with the Baldwin Park Police Department ("BPPD"), advising the BPPD of a person stalking him and Slyker (the "Police Report"). Attached hereto and incorporated herein as Exhibit H is a true and correct copy of the Police Report.

64.     As part of filing the Police Report Andy provided the BPPD with a license plate number and description of the individual following them.

65.     As stated in the Police Report filed with the BPPD, the person following Andy and Slyker was a Caucasian male, approximately 5'7" to 5'9" in height, with a bald head, a goatee or a small beard about 3 to 4 inches long, weighed approximately 180 to 220 pounds, and had a very short neck, round face and stocky build. During the second stalking encounter, the person stalking Andy and Slyker was wearing a Hard Rock Cafe white t-shirt and blue jeans.

66.     On or about January 15, 2014, Andy arrived at his 1533 Peck Road store at 8:00 a.m. After spending approximately fifteen minutes in the Store, he noticed a black vehicle (the "Black Vehicle") parked across the street from the store.

67.     While Andy began going from one Store to another, he was followed by the Black Vehicle.

68.     While en route, Andy turned off his cellular telephone and attempted to lose the Black Vehicle by changing the Store he was in route to.

69.     After arriving at the Whittier Boulevard store, Andy powered his cellular telephone back on. Approximately five to ten minutes after arriving at the Whittier Boulevard store, the Black Vehicle arrived at the store and proceeded to park outside the front entrance.

70.     Upon walking out of the Whittier Boulevard store, Andy attempted to approach the Black Vehicle. Upon seeing Andy approach, the Black Vehicle drove out of the parking lot.

71.     While walking towards the Black Vehicle, Andy was able to confirm that the driver was the same person who had been driving the White Vehicle.

72.     Subsequently, on or about January 18, 2014, Andy observed the same driver sitting in a brown vehicle (the "Brown Vehicle") in the parking lot outside a CVS Pharmacy Andy was patronizing on Nogales Street.

73.     When the driver saw Andy, the driver accelerated the Brown Vehicle, driving directly towards Andy.

74.     Despite Andy's efforts to avoid the vehicle, the vehicle brushed up against him, rubbing against his pants, and causing Andy to fall backwards to the floor.

75.     Given the close proximity between Andy and the Brown Vehicle, Andy was able to confirm that it was the same person who had driven the Black and White Vehicles.

76.     On this occasion, the driver was wearing a red-, black- and white-colored bandana skullcap.

77.     Upon information and belief, the driver was attempting to hit Andy with the Brown Vehicle. Upon further information and belief, this was in retaliation for Andy filing the Police Report with the BPPD.

78.     After this third, near-fatal experience, Andy brought the repeated incidents to Dennis Urrutia's attention.

79.     Upon information and belief, the person driving the White, Black and Brown Vehicles was a 7-Eleven employee and/or a Private Investigator hired by 7-Eleven or its employees.

80.     The injury inflicted upon Andy includes, but is not limited to, severe emotional fear and suffering, as well as persistent paranoia.

### 7-ELEVEN'S MOTIVE

81.     Upon information and belief, in stalking and attempting to injure Andy, 7-Eleven is executing a plan to remove 7-Eleven franchisees who are older – both in age and time as a franchisee.

82.     7-Eleven has a history of targeting FOA officers, outspoken 7-Eleven Operators, and "old school" franchisees who tend to be very vocal and influential within the retailer's franchisee community.

83.     7-Eleven's attempt to remove "old school" franchisee was described, in detail, in a Convenience Store News ("CSNews") article. Attached hereto and incorporated herein as Exhibit I is a true and correct copy of the Convenience Store News article.

84.     Upon further information and belief, 7-Eleven is attempting remove those franchisees that do not fit 7-Eleven's current franchisee model.

85.     Andy is fifty-five years old, and has been a franchisee for nearly thirty-four years, making him a prime target of 7-Eleven and its discriminatory plan.

86.     7-Eleven's attempts are exacerbated by the fact that Andy has been an extremely active member within the 7-Eleven franchisee community, as described in detail herein.

87.     Upon information and belief, 7-Eleven is trying to ensure that Andy is removed from the 7-Eleven system – either by choice or force.

88.     Upon further information and belief, 7-Eleven is using similar tactics against other franchisees, which tactics include, but are not limited to, stalking, illegally gathering personal information, and fear-invoking maneuvers.

89.     Upon further information and belief, 7-Eleven is executing this discriminatory plan through its "Profit Assurance Team."

## COUNT ONE
### VIOLATION OF THE CALIFORNIA UNFAIR BUSINESS PRACTICES ACT
Cal. Bus. & Prof. Code §§ 17200, *et. seq.*

90.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full.

91.     California Business & Professions Code §§17200, *et. seq.* defines unfair competition as any unlawful, unfair, or fraudulent business act of practice.

92.     By the conduct alleged herein, Defendant has engaged and continues to engage in a business practice that violates California law, including but not limited to, conducting private investigations by way of unlicensed private investigators within the State of California.

93.     California Business and Professional Code 7521 defines a private investigator as any person "who, for any consideration…whatsoever engages in business or accepts employment to furnish, or agrees to make, or makes any investigation for the purpose of obtaining, information with reference to…the identity, habits, conduct, business, occupation, honesty, … knowledge, … whereabouts, … associations, … acts, reputation, or character of a person.

94.     Under California Business and Professional Code 7520, a private investigator must be licensed by the California Bureau of Security and Investigative Services ("BSIS").

95.     Upon information and belief, Defendant has failed to comply with the licensing provision of California Business and Professional Code 7520 and 7528.

96.     A licensing violation, such as the one at issue, is considered an unlawful, unfair or fraudulent business act or practice act as defined under California's Unfair Business Practices Act.

97.     As a direct result of Defendant's misconduct, Plaintiff Andy is entitled to a preliminary and permanent injunction.

### COUNT TWO
### VIOLATION OF CALIFORNIA'S CICIL ANTI-STALKING STATUTE
Cal. Civ. Code § 1708.7, *et seq.*

98.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full.

99.     Defendant's conduct alleged herein clearly shows a pattern of conduct implemented with the intent to follow, alarm or harass Andy.

100.    Defendant made "credible threats," placing Andy in reasonable fear for his safety, by way of Defendant's menacing and unrelenting following of the Andy.

101.    Due to Defendant's vile misconduct, Andy reasonably feared for his safety and wellbeing.

102.    In an effort to put an end to Defendant's stalking, Andy sought help from local authorities, the FBI, and reached out directly to Defendant's agents, employees and/or representatives.

103.    Regardless of Andy's efforts to see the followings cease and desist, the stalking persisted.

104.    As a direct and proximate result of Defendant's misconduct, Andy has sustained severe emotional distress. Andy herein seeks equitable relief, including but not limited to, damages in the form of general damages, special damages and punitive damages pursuant to Section 3294.

## COUNT THREE
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

105.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full.

106.    Defendant's conduct alleged herein, such as Defendant's persistent following and stalking of Andy, constitutes outrageous conduct.

107.    Defendant intended to cause Andy emotional distress, or at least displayed a reckless disregard for the possibility that its conduct would cause Andy emotional distress by blatantly ignoring Andy and his efforts to put an end to Defendant's stalking.

108.    As a direct and proximate result of Defendant's stalking, Andy has suffered and continues to suffer emotional distress.

**WHEREFORE,** Plaintiff demands trial by jury and judgment against Defendant as follows:

(a)     Defendant be temporarily, preliminary and permanently restrained and enjoined from conducting private investigations in connection with Plaintiff, Plaintiff's family, the Stores, and Plaintiff's employees, agents and representatives;

(b)     Compensatory and consequential damages resulting from Defendant's violation of California's Unfair Business Practices Act;

(c)     Compensatory, consequential and punitive damages resulting from Defendant's violation of Cal. Civ. Code § 1708.7;

(d)     Compensatory, consequential and punitive damages resulting from Defendant's Intentional Infliction of Emotional Distress;

(e)     Additional damages, as provided by law;

(f)     Attorneys' fees, costs and disbursements as provided by law or contract; and;

(g)     Such other and further relief as this Court may deem just and proper.

Dated: March 18, 2014

By: Eric Schindler, Esq. (State Bar No. 141386)
**SCHINDLER LAW GROUP**
20321 SW Birch Street, Suite 200
Newport Beach, California 92660
Telephone: (949) 483-8700
Facsimile: (949) 464-9714
eric@schindlerlaw.net

1    Of Counsel:

2    **MARKS & KLEIN, LLP**
     Gerald A. Marks, Esq. (*Pro Hac Vice* Forthcoming)
3    Evan M. Goldman, Esq. (*Pro Hac Vice* Forthcoming)
     63 Riverside Avenue
4    Red Bank, New Jersey 07701
     Telephone: (732) 747-7100
5    Facsimile: (732) 219-0625
     jerry@marksklein.com
6    evan@marksklein.com

7

8    **<u>DEMAND FOR JURY TRIAL</u>**

9        Plaintiff hereby demands a trial by jury of all issues so triable.

10

11   _____

12   By: Eric Schindler, Esq. (State Bar No. 141386)
     **SCHINDLER LAW GROUP**
13   Counsel for Plaintiff

14   Dated: March 18, 2014

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **VERIFICATION OF ADNAN KHAN**

2

    I, Adnan Khan, Plaintiff in this matter, have read the contents of the Verified Complaint

3

and hereby verify, under penalty of perjury, that the allegations set forth therein are true and

4

accurate to the best of my knowledge.

5

6

7 Executed this 18th day of March 2014

ADNAN KHAN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

**7-ELEVEN FRANCHISE OWNERS**

 **ASSOCIATION**

**OF GREATER LOS ANGELES**

# Franchisee of the Year
## Award
## 2008

# ADNAN KHAN

Proudly Sponsored
By

# EXHIBIT B



# Certificate of Achievement

presented to

*Andy Khan*

**Go-Live Readiness Advisor for the LA Pilot**

Thank you for your commitment and dedication in the successful rollout of the Business Transformation Pilot in LA.

*Ena Williams*
Vice President
Southwest Division

*Tom Scalfion*
Vice President
Business Transformation

April 25, 2011

# EXHIBIT C



# EXHIBIT D

# EXHIBIT E

# Certificate of Congressional Commendation

*Presented To*

## Adnan Khan

*Watts-South Los Angeles Teen Community Emergency Response Team (CERT)*

In honor of your outstanding and valuable service to the residents of Los Angeles County.
It gives me great pleasure to recognize your commitment to safety and dedication to the community.
Best wishes and continued success.

September 23, 2013
*Date*

Congresswoman Janice Hahn

# EXHIBIT F




News Brief

**7-Eleven adds 35 Asset Protection positions – the biggest Asset Protection roll-out of 2013** The evolution of the Asset Protection program at 7-Eleven has taken off since Mark Stinde, VP AP joined the organization a couple of years ago. Driven by analytics, they have been able to show a significant return on their investment to the point where it's justified adding 35 Asset Protection positions this year. This is the leading retailer of the year for Asset protection growth.

# EXHIBIT G



# EXHIBIT H



14403 E. Pacific Avenue
Baldwin Park, CA 91706
(626) 960-4011

## RECEIPT

DATE __03/11/14__     FEE __$20.00__

RECEIVED FROM _____

ADNAN  KHAN

518  TRI  NET  CT

WALNUT, CA  91789

14-01172

PURPOSE __COPY  OF  INCIDENT  LOG__

ISSUED BY __NEWTON  4258__

THIS RECEIPT WHEN VALIDATED
BECOMES A PART OF THE RECORDS
OF THE CITY OF BALDWIN PARK

Screen Image of Records6 generated by dnewton at 16:03:48 03/11/14

```
Incident Number:  14-01142
Nature: Advisal          Case Number:                        Image:
  Addr= PACIFIC AV & BOGART AV; 10-19           Area: 3
  City: Baldwin Park     ST: CA  Zip: 91706      Contact: KHAN ADAN
  Complainant&
  Lst:                         Fst:              Mid:
  DOB:          SSN:           Adr:
  Rac:  Sx:  Tel:              Cty:               ST:    Zip:

  Offense Codes: NC                    Reported: NC    Observed:
  Circumstances:
:spndg Officers: M Quintero      S Keef
.spnsbl Officer: M Quintero      Agency: BPPD          CAD Call ID:    813
    Received By: R Esparza       Last RadLog: 13:37:16 01/13/14    C
  How Received: T  Telephone        Clearance: NO   No Report Require
  When Reported: 13:02:03 01/13/14   Disposition: ADV  Disp Date: 01/13/
ccurrd between: 12:59:56 01/13/14   Judicial Sts:
            and: 12:59:56 01/13/14    Misc Entry:
O:
Narrative:
upplement: CAD Call info/comments
```

Screen Image of Records6 generated by dnewton at 16:03:48 03/11/14

Incident Number:  14-01142
Nature: Advisal          Case Number:                              Image:
  Addr= PACIFIC AV & BOGART AV; 10-19          Area: 3
  City: Baldwin Park     ST: CA  Zip: 91706    Contact: KHAN ADAN
  Complainant&
  Lst:                             Fst:              Mid:
  DOB:            SSN:             Adr:
  Rac:  Sx:  Tel:                  Cty:              ST:    Zip:

  Offense Codes: NC                    Reported: NC    Observed:
Circumstances:
spndg Officers: M Quintero       S Keef
spnsbl Officer: M Quintero       Agency: BPPD          CAD Call ID:    813
   Received By: R Esparza            Last RadLog: 13:37:16 01/13/14      C
  How Received: T  Telephone          Clearance: NO   No Report Require
When Reported: 13:02:03 01/13/14    Disposition: ADV  Disp Date: 01/13/
ccurrd between: 12:59:56 01/13/14   Judicial Sts:
           and: 12:59:56 01/13/14     Misc Entry:
O:
Narrative:
upplement: CAD Call info/comments

# EXHIBIT I

7-Eleven Paves Some Delays on the Road to Franchising

February 18, 2014, 05:30 pm



Convenience Store News
★ EXCLUSIVE

DALLAS -- The year was 2007 and 7-Eleven Inc. announced its intent to get out of running its own stores and instead move entirely to a franchised operation. The nation's largest convenience store chain targeted 2013 as the year when this vision would come to fruition.

It's now 2014 and 7-Eleven acknowledges it not fully franchised, but affirms that it is growing its franchise base every day. Currently, 75 percent of its U.S. stores are operated by independent franchisees. Before launching its franchising endeavor, that figure stood at about 60 percent.

"I can tell you that we are on a journey to be a virtually franchised company in the USA. Several years ago, we had an aspiration to be fully franchised by the end of 2013. But, and not at all surprising, business and opportunities changed. We had cleaned up our balance sheet, were poised for growth and took advantage of many acquisition opportunities that presented themselves in 2011 and 2012," 7-Eleven spokesperson Margaret Chabris told *CSNews Online*.

While last year's unit growth was slower, 2012 marked a record year for Dallas-based 7-Eleven as it added a net 969 locations, of which 961 were U.S. additions. The chain's growth strategy is to build

particularly in regards to its daily delivery infrastructure.

New stores, though, are harder to get franchised right away since 7-Eleven has to convert each store to its brand and product offering before it can be offered up for franchise.

According to Chabris, 7-Eleven has grown its store units by 35 percent since 2008, with the majority of that growth happening in the last two to three years. "We added more than 1,000 new locations just in 2012, both ground up/new-to-industry as well as acquired stores. Our focus had to shift to doing an excellent job of studying each location, determining its potential, getting proper permits and then, the huge jobs of remodeling, installing proprietary equipment and merchandising programs," she said. "You can imagine the work involved in conversions of this magnitude."

Going forward, 7-Eleven is "highly interested" in finding franchisees who want to start off with several stores at one time. The company, Chabris said, believes selling franchises to those who can manage multiple stores will help accelerate its franchising efforts.

"We are a vibrant, successful, growing company looking for the right people who want to be backed by the world's c-store leader in creating a business they can be proud of," she concluded.

Besides the store unit growth, however, multiple sources interviewed by *CSNews Online* say something else is also at play in delaying 7-Eleven's journey from corporate to franchise. In an ironic twist, 7-Eleven's franchisee community itself may be causing speed bumps. Sources tell *CSNews* that company leaders are having to expend a lot of time and energy lately trying to get the franchisees to embrace new initiatives 7-Eleven is rolling out to elevate the brand and make it resonate better with Millennials, the new "it" generation, while meeting resistance from some long-time franchisees.

One former 7-Eleven corporate employee who asked to remain anonymous said the chain's franchisee pool is currently split between three distinct groups: old school, middle of the road, and the new regime. The one-third of operators who are old school got their stores long ago when there wasn't a lot of criteria to become a 7-Eleven franchisee. "These guys made a lot of money and now they're just going through the motions. They just want to run a convenience store," the former employee said.

The middle one-third, meanwhile, has been with 7-Eleven for a moderate amount of time and they're on the bubble. They're not real productive, but they could be with the right influence.

Finally, there's the new regime -- operators who have joined the system most recently. This group is made up of very aggressive marketers who are pro-7-Eleven and support the company's efforts to change, specifically 7-Eleven's push around fresh food.

While it's not uncommon in any franchise system to have varying levels of franchisees, the challenge for 7-Eleven is that its old school group is very vocal and influential in the retailer's franchisee community, according to the former employee. "They wield a lot of power in the organization and the old school is now negatively influencing the middle third," he noted.

News headlines from "CSnews.com" over the last year show many certain events or

- 7-Eleven Ousts Several Chicago-Area Franchisees (September)

- 7-Eleven Franchisees File Suit Alleging Abuse of Contractual Rights (July)

- 7-Eleven Sues Long Island Franchisee for Siphoning Money (June)

- 7-Eleven Franchisees Sue Company for Lagging Behind Competition (June)

- Feds Raid 14 7-Eleven Stores (June)

"I think they're right to try and elevate the level of franchisees for the good of everyone. 7-Eleven had to take action. Some of these franchisees weren't changing. They weren't willing to make the change to 'the new convenience store operator' and it was holding the chain back," the former employee stated. "The company was put in a position of how do we move these operators to not just rely on cigarettes but embrace food, beverages, new business development and private-label products. The tactics employed is what's causing the problems with the franchisees."

A couple of years into its journey to operating all franchised units, 7-Eleven CEO Joe DePinto, speaking at the NACS Leadership Forum in Miami, said the retailer was making progress not only toward increasing its franchisee base, but also in overhauling its corporate culture to one of "servant leadership" that supports the stores and franchisees. "To stay relevant, you have to listen to your customer and change," said DePinto. "Our customers, the environment and the competition is changing rapidly. We must be mindful of that and change just as rapidly."

For much more on 7-Eleven's journey to change, check out the February cover story of *Convenience Store News*.

- See more at: http://www.csnews.com/industry-news-and-trends/special-features/7-eleven-faces-some-delays-road-franchising#sthash.Dfyi46Va.dpuf

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____ Jesus G. Bernal _____ and the assigned Magistrate Judge is _____ Sheri Pym _____ .

The case number on all documents filed with the Court should read as follows:

## EDCV14-00522 JGB (SPx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

March 18, 2014

Date

By  L. Murray

Deputy Clerk

## NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

☐ Western Division
312 N. Spring Street, G-8
Los Angeles, CA 90012

☐ Southern Division
411 West Fourth St., Ste 1053
Santa Ana, CA 92701

☒ Eastern Division
3470 Twelfth Street, Room 134
Riverside, CA 92501

**Failure to file at the proper location will result in your documents being returned to you.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

Adnan Khan

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

7-Eleven, Inc.

**(b)** County of Residence of First Listed Plaintiff   Los Angeles, CA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Dallas, TX
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c)** Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information.
Schindler Law Group
20321 SW Birch Street, Suite 200
Newport Beach, CA 92660
(949) 483-8700

Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No      ☐ **MONEY DEMANDED IN COMPLAINT:** $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Violation of the California Unfair Business Practices Act, Violation of the California Civil Anti-Stalking Statute, Intentional Infliction of Emotional Distress

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☒ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | BY FAX |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:**   Case Number:   EDCV 14-00522 JGB (SPx)

MAR 18 2014

CV-71 (11/13)                    CIVIL COVER SHEET                    Page 1 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes ☒ No | ☐ Los Angeles | Western |
| If "no, " go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| ☐ Yes ☒ No | **A PLAINTIFF?** Then check the box below for the county in which the majority of DEFENDANTS reside. | **A DEFENDANT?** Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| If "no, " go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |
| Indicate the location in which a majority of claims arose: | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ |

| C.1. Is either of the following true? If so, check the one that applies: | C.2. Is either of the following true? If so, check the one that applies: |
|---|---|
| ☐ 2 or more answers in Column C | ☐ 2 or more answers in Column D |
| ☐ only 1 answer in Column C and no answers in Column D | ☒ only 1 answer in Column D and no answers in Column C |
| Your case will initially be assigned to the SOUTHERN DIVISION. Enter "Southern" in response to Question D, below. | Your case will initially be assigned to the EASTERN DIVISION. Enter "Eastern" in response to Question D, below. |
| If none applies, answer question C2 to the right. ➡ | If none applies, go to the box below. ⬇ |

Your case will initially be assigned to the
**WESTERN DIVISION.**
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | Southern |

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court** and dismissed, remanded or closed?  ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed i**n this court** that are related to the present case?  ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

## X. SIGNATURE OF ATTORNEY
**(OR SELF-REPRESENTED LITIGANT):** s/ Eric J. Schindler                    DATE: 3/18/2014

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |